UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESIDENTIAL ENERGY SERVICES NETWORK, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>BUILDING SCIENCE INSTITUTE, LTD. CO., et al.,<br><br>          Defendants. | Case No.: 3:22-cv-1641-AGS-MSB<br><br>**ORDER DENYING:**<br> **(1) DEFENDANTS' DISMISSAL MOTION (ECF 42);**<br> **(2) DEFENDANTS' MOTION TO STRIKE (ECF 42); AND**<br> **(3) JUDICIAL-NOTICE REQUESTS (ECF 42-4 & 47-2)** |

  In this trademark-infringement case, defendants move to dismiss the second amended complaint or, in the alternative, to strike portions of it.

## **BACKGROUND**[1]

  Since 2007, plaintiff Residential Energy Services Network (RESNET) has owned a trademark for the acronym "HERS." (*Id.* at 4–5; *see* ECF 40-7, at 2–3.) According to RESNET, its "Home Energy Rating System ('HERS®') Index is the industry standard by which a home's energy efficiency is measured." (ECF 40, at 3.)

  In 2022, defendant Building Science Institute, Ltd. Co. (BSI)—a newly formed competitor and self-described "alternative to RESNET"—sent a mass-solicitation email touting the advantages of its "home energy rating system (H.E.R.S.) Quality Management System." (*Id.* at 7–8; *see* ECF 40-10, at 2.) BSI's website repeated that language, referring to "the BSI home energy rating system (H.E.R.S.)" as well as BSI's objective to "bring professional quality management standards to the home energy rating system (H.E.R.S.) industry." (ECF 40, at 7.)

---

[1] At this early stage, the Court accepts "the factual allegations in the complaint as true" and construes them "in the light most favorable to the plaintiff." *GP Vincent II v. Estate of Beard*, 68 F.4th 508, 514 (9th Cir. 2023).

1

RESNET promptly sued, alleging that BSI's use of "H.E.R.S." infringed its trademark rights. And this Court preliminarily enjoined defendants' use of "HERS." (*See* ECF 28.) RESNET later filed a second amended complaint, which defendants now seek to dismiss or to strike.

### DISCUSSION

#### MOTION TO DISMISS

Defendants move to dismiss all RESNET's causes of action: Lanham Act claims of trademark infringement, false advertising, false designation of origin, and unfair competition, as well as a violation of California's Unfair Competition Law. To survive such a motion, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All allegations in the complaint are taken as true, save allegations that are "sufficiently fantastic to defy reality as we know it." *Id.* at 696.

**A.    Trademark-Infringement Claim**

For RESNET to state a claim of trademark infringement under the Lanham Act, it must plausibly allege: (1) "a valid, protectable trademark," (2) which it "owns . . . as a trademark," and (3) that "defendant used" a "mark similar to" it "in interstate commerce" (4) "without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods." Ninth Circuit Model Jury Instructions § 15.6 (2017 ed., last updated June 2024).

**1.    *Ownership***

"Registration of a mark is prima facie evidence of . . . the registrant's ownership of the mark." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). The complaint alleges that on "January 3, 2007, RESNET filed for a trademark on 'HERS,'" and on "September 16, 2017, RESNET received its renewal for the 'HERS' trademark." (ECF 40, at 4–5.) These facts alone sufficiently allege ownership.

Defendants nonetheless assail the ownership allegations based on a key attachment to the complaint: the mark's registration. That document reflects the registrant as an

Arkansas entity (ECF 40-4, at 2), which defendants reckon excludes the California-based plaintiff from ownership. (*See* ECF 42, at 13.) While a court may treat an attachment as part of the complaint itself "and thus may assume that its contents are true for purposes of a motion to dismiss," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), it "must resolve any ambiguities in the considered documents in the plaintiff's favor," *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1102 (D. Ariz. 2003). Thus, this Court cannot take such a cramped view of the registration. In the light most favorable to plaintiff, in fact, it supports RESNET's ownership claim. First, the name of the mark's registrant—"Residential Energy Services, Inc."—is strikingly similar to plaintiff's, whatever its state of incorporation. (*See* ECF 40-4, at 2.) Second, the address for that "Arkansas" registrant is in Oceanside, California. (*Id.*) Finally, RESNET also attached the trademark's 2017 renewal, which identifies the mark's registered owner as "Residential Energy Services Network, In[c.]"—plaintiff's precise name. (*See* ECF 40-7, at 2.) Resolving all ambiguities in plaintiff's favor, RESNET has plausibly pleaded that it owned the "HERS" mark during the relevant 2022 events.

### 2. Other Arguments

Defendants otherwise maintain that their references to "HERS" were descriptive fair use and that, in any event, "HERS" is an unprotectable "generic" term. (*See* ECF 42, at 13–23.) And they gesture towards unprotected goods and services allegedly outside the scope of RESNET's trademark.

"A claim may only be dismissed for failure to allege a likelihood of confusion if the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely." *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556-AB (JCx), 2021 WL 922074, at *5 (C.D. Cal. Jan. 7, 2021) (quotation marks omitted). Due to this high standard, and "because of its fact intensive nature, the fair use analysis is not generally resolvable at the pleading stage." *Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, No. CV 20-9482-DMG (ASX), 2021 WL 4134841, at *5 (C.D. Cal. Aug. 6, 2021). Similarly, courts are "normally preclude[d] from determining at the pleading stage whether

a mark is generic." *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 998 (N.D. Cal. 2014). This case illustrates why. Whether BSI's use of "HERS" was merely "descriptive" and "fair" may turn on whether it is too generic to be trademarked in the first place. (*See* ECF 42, at 20 (claiming that government agencies "utilized the acronym HERS" generically as early as 1981).) And RESNET will surely argue that BSI used "H.E.R.S." as a mark, not merely "to describe [its] goods and services." *See* 15 U.S.C. § 1115(b)(4). Yet such factual disputes "have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

At any rate, the Court cannot resolve these questions now as a matter of law, without further factual development. *See Pinterest Inc.*, 15 F. Supp. 3d at 998–99 (restricting dismissal motions on these issues to cases in which "the complaint suffers from a *complete* failure to state a plausible basis for trademark protection" (emphasis added)).

Separately, defendants argue that RESNET "wants this Court to increase the scope of protection for goods and services to include additional goods and services not expressly covered in [RESNET's] trademark registration." (ECF 42, at 16.) But under the Lanham Act "a trademark owner may seek redress if another's use of the mark on *different* goods or services is likely to cause confusion with the owner's use of the mark in connection with its registered good." *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 971 (9th Cir. 2007) (emphasis added).

In sum, the motion to dismiss RESNET's trademark-infringement claim fails.

**B.    False-Advertising Claim**

Defendants seek to dismiss the second amended complaint "in its entirety," which would include RESNET's false-advertising cause of action. (ECF 42, at 10.) Such a claim comprises five unique elements, *see Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1071–72 (9th Cir. 2014), but defendants fail to address even one. "It is not the district court's task 'to scour the record' for support to the parties' arguments." *IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP*, No. 2:17-cv-06189-ODW (AGR), 2018 WL 5983550,

at *2 (C.D. Cal. Nov. 14, 2018) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996)). So, the request to dismiss RESNET's false-advertising claim is denied.

## C. Other Claims

RESNET's three remaining claims rise or fall with its trademark-infringement claim, and thus pass muster for present purposes. A claim for false designation of origin is "subject to the same standard" as trademark infringement, "except a claim for false designation of origin does not require that the mark be registered." *Celebrity Chefs Tour, LLC v. Macy's Inc.*, 16 F. Supp. 3d 1123, 1136 (S.D. Cal. 2014) (cleaned up) (citing *Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999)). Similarly, "the elements needed to establish federal unfair competition under 15 U.S.C. § 1125(a) are identical to the elements needed to establish trademark infringement under 15 U.S.C. § 1114." *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 622 (9th Cir. 2017). Finally, a claim under California's Unfair Competition Law "is substantially congruent to a trademark infringement claim under the Lanham Act. Under both, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (cleaned up).

Accordingly, defendants' motion to dismiss is denied.

## MOTION TO STRIKE

In the alternative, defendants move to strike certain paragraphs and exhibits. (*See* ECF 42, at 23–26.) A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). Such motions are generally disfavored "because of the limited importance of pleadings in federal practice." *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015).

### A. Dropped Claims and Irrelevant History

Defendants move to strike portions of the second amended complaint on the grounds that they relate to dropped claims or simply "recite the procedural history of this case." (*See* ECF 42, at 24.) For instance, RESNET describes its past contracts with defendants that allowed them limited use of its trademarks (*see* ECF 40, at 5–6), yet brings no breach-of-contract claim. But the proper inquiry is whether the portions sought to be stricken have any "possible bearing on" the litigation as a whole—the "subject matter" of which is infringement of the "HERS" trademark. *See Colaprico*, 758 F. Supp. at 1339. The complaint's mention of past, rescinded contracts underscores the assertion that defendants have no right to use RESNET's intellectual property today. It also may inform whether any such violation of RESNET's rights was willful. Defendants have not shown how these segments fail to have any "possible relationship to the controversy." *See Cortina*, 94 F. Supp. 3d at 1182.

### B. Paragraph 30, Third Example

In addition, defendants urge that "the third example of alleged infringement" in paragraph 30 of the current complaint (*see* ECF 40, at 7) be stricken, because it was "previously deemed not an infringement by the Court" at the preliminary-injunction hearing. (ECF 42, at 24.) Not so. At that hearing, the Court discussed that example only in the context of nominative fair use of the "RESNET" mark, not the "HERS" mark. (*See* ECF 29, at 15–16, 18–19.) Nowhere did it find that the defense's use of "HERS" in those examples was an instance of nominative fair use, let alone "not an infringement."

### C. Paragraph 108: UCL Restitution

Defendants also quarrel with RESNET's request for restitution of defendants' profits under California's Unfair Competition Law in paragraph 108 of the operative complaint. (ECF 42, at 25 (citing ECF 40, at 17).) And they have a point. The UCL does not authorize "restitution" in the form of disgorgement of profits obtained from third parties. *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 944–47 (Cal. 2003). It is instead limited

to replacing "money or property that defendants took directly from plaintiff." *Korea Supply*, 63 P.3d at 947. RESNET alleges no such direct taking.

While the Court agrees with defendants' understanding of restitution under the UCL, "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010). Such relief may be "better suited for a Rule 12(b)(6) motion" to dismiss, *id*. at 974, but that motion is not before the Court. Regardless, RESNET's demand for an award of defendants' profits is potentially available under the Lanham Act, so the request for those profits in RESNET's omnibus "prayer for relief" would survive at all events. *See* 15 U.S.C. § 1117(a); (ECF 40, at 20).

**D.   Duplicative Claim**

Lastly, defendants argue that dismissing the improper UCL restitution request has downstream effects. Specifically, the only possible remaining UCL relief is the same injunction available under the trademark-infringement claim, rendering the UCL claim "duplicative" and subject to "being stricken." (ECF 42, at 28.) Setting aside that "Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint," *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977), a party may "state as many separate claims . . . as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(3). "Unless a claim is insufficiently pled, it is premature at the pleadings stage to dismiss a claim simply because it appears duplicative." *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANX), 2014 WL 10988343, at *12 (C.D. Cal. Dec. 29, 2014). Claims that seem redundant in a case's early stages "may turn out to be the only viable claims for trial." *Id.* The request to strike for improper duplication is denied.

### MOTIONS FOR JUDICIAL NOTICE

As a final housekeeping matter, each side requests judicial notice of various documents. (*See* ECF 42-4; ECF 47-2.) "But the Court need not take notice of documents that do not provide any additional relevant information, even if they would otherwise be the proper subject of judicial notice." *Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107,

7

1115 (S.D. Cal. 2018) (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 n.2 (9th Cir. 1990)); *see also Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*, 445 F. Supp. 3d 695, 701 n.8 (C.D. Cal. 2020) (denying judicial notice after finding no "documents referenced in the RJN necessary to resolve" the motion), *aff'd*, No. 20-55643, 2023 WL 4398498 (9th Cir. July 7, 2023). Because the Court can resolve the foregoing motions without recourse to any of these extrinsic documents, the judicial-notice requests are denied without prejudice.

## CONCLUSION

Defendants' motions to dismiss and to strike portions of the second amended complaint are **DENIED**. The parties' judicial-notice motions are **DENIED**.

Dated:  August 30, 2024

_____
Andrew G. Schopler
United States District Judge