UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| RESIDENTIAL ENERGY SERVICES NETWORK, INC., Plaintiff, v. BUILDING SCIENCE INSTITUTE, LTD. CO., et al., Defendants. | Case No.: 22-cv-1641-AGS-MSB **ORDER GRANTING IN PART PLAINTIFF'S MOTION TO DISMISS OR STRIKE COUNTERCLAIMS (ECF 58)** |
|---|---|

In this trademark-infringement action, plaintiff Residential Energy Services Network, Inc., alleged that defendant Building Science Institute, Ltd. Co., unlawfully used RESNET's trademarked acronym "HERS." BSI responded with five counterclaims, and RESNET now moves to dismiss or strike them all.

## DISCUSSION

### A.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Facial plausibility requires more than mere "conclusions" or a "formulaic recitation" of elements; it must be based on "factual allegations" that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The same standard applies to counterclaims. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts," "taken as true," that "plausibly suggest an entitlement to relief.").

#### 1. *Counterclaim 1: Declaration of Noninfringement*

In its first counterclaim, BSI "requests a declaration by the Court that BSI has not infringed and does not infringe" upon "the purported HERS trademark." (ECF 53, at 5.)

RESNET moves to dismiss this counterclaim because it is "redundant" of RESNET's own "claims for trademark infringement." (ECF 58-1, at 11.) But "courts should decline to dismiss counterclaims that seek a declaration that" a "trademark is invalid" on "redundan[cy]" grounds. *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *4 (N.D. Cal. May 13, 2008). After all, "a court may find a defendant has no liability for infringement without adjudicating the validity of the underlying intellectual property." *Id.* (quotations omitted). And the counterclaiming defendant "has something to gain from a counterclaim declaration of" noninfringement—"it can go on to develop its products without fear of infringing." *Id.* (quotations omitted). So RESNET's motion to dismiss BSI's first counterclaim is denied.

### 2. *Counterclaims 2 and 3: Declaration of Trademark Invalidity and Declaration of Fraud upon the Trademark Office*

BSI's second and third counterclaims appear to be grounded in the same allegation: RESNET committed "[f]raud on the [t]rademark [o]ffice." (*See* ECF 53, at 5–6.) Specifically, BSI asks the Court to "declar[e]" that RESNET's HERS trademark "is invalid and unenforceable as issued by the" United States Patent and Trademark Office (counterclaim 2) because RESNET committed "[f]raud on the [t]rademark [o]ffice" (counterclaim 3). (*Id.*) Both counterclaims fail because BSI has not sufficiently alleged that RESNET engaged in fraud.

The first element in proving a petition to cancel a trademark based on fraud is that the applicant made "a false representation regarding a material fact." *OTR Wheel Eng'g, Inc. v. West Worldwide Servs., Inc.*, 897 F.3d 1008, 1019 (9th Cir. 2018). "[I]t is well established that an applicant for a registration of a trademark has a duty of candor in his communications with the PTO, and fraud arises not only where the applicant makes false statements but also where the applicant fails to make full disclosure of all material facts." *His & Her Corp v. Shake-N-Go Fashion Inc.*, No. CV 11-05323 GAF (VBKx), 2012 WL 13009119, at *4 (C.D. Cal. Mar. 22, 2012) (cleaned up).

BSI's main theory is that a RESNET representative intentionally withheld

2

information about the government's HERS use when he falsely "declar[ed]" in the HERS trademark application that—to the best of his "knowledge and belief"—"no other person, firm, corporation, or association has the right to use the mark in commerce." (ECF 53, at 7.) According to BSI, the government began using HERS "[a]s early as 1981," and RESNET's predecessor didn't file the trademark application until "2007." (*Id.* at 3–4.) But a trademark "applicant" is "not require[d]" "to disclose those persons whom he may have heard are using the mark if he feels that the rights of such others are not superior to his." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (cleaned up). Put another way, "[t]here is no requirement that an applicant for a trademark registration disclose all prior use of a mark. . . . Instead, an applicant must disclose only those prior users that the applicant believes have acquired superior rights to the mark in the classification for which registration is sought." *Neurovision Med. Prods. Inc. v. NuVasive, Inc.*, 494 F. App'x 749, 751 (9th Cir. 2012). The counterclaims allege no facts that suggest RESNET believed "that the [HERS-use] rights of" those governmental agencies were "superior to" RESNET's. *See Quiksilver*, 466 F.3d at 755. So, BSI's argument is unavailing.

Next, BSI asserts that "[a]t no time during the prosecution of the HERS trademark application did ResNet inform the USPTO that HERS is an acronym for the then widely used descriptive term **H**ome **E**nergy **R**ating **S**ystem." (ECF 53, at 5.) In BSI's telling, RESNET "intentionally withheld this material information to mislead the USPTO into issuing a trademark." (*Id.*) This is fraud, BSI argues, because the Trademark Manual of Examining Procedure states that an acronym is non-trademarkable if it is "merely descriptive of" "goods or services" and "readily understood by relevant purchasers to be substantially synonymous with the merely descriptive wording it represents." Trademark Manual of Examining Procedure § 1209.03(h); (*see* ECF 61, at 12).

But BSI offers no authority—and this Court's own research uncovered none—suggesting that a failure to disclose a trademark's descriptive nature can constitute fraud. In fact, the Trademark Trial and Appeal Board found the opposite: "Because considerations of a mark's descriptiveness are not included among [an] applicant's statutory duties," "no

fraud can occur based upon [an] applicant's failure to disclose to the Office the descriptive nature of the mark at issue." *John Abate Int'l, Inc. & Carina Prods., Ltd.*, Cancellation No. 28,890, 2001 WL 817791, at *5 (T.T.A.B. July 18, 2001). In other words, although the term's allegedly descriptive nature might have been a problem in the years before the trademark here reached incontestability, it does not support a fraud claim now. *See Bart Schwartz Int'l Textiles, Ltd. v. F.T.C.*, 289 F.2d 665, 668 (C.C.P.A. 1961) (finding that although the word in question was "descriptive" and therefore "cannot be registered" "as a trademark for the described product," "[t]his fact is of no assistance to" the petitioner's argument that the "registration was obtained fraudulently"); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005) ("[A] defendant in a trademark infringement action cannot assert that an incontestable mark is invalid because it is descriptive and lacks secondary meaning.").

Thus, BSI has not sufficiently alleged that RESNET committed fraud. So RESNET's motion to dismiss BSI's third counterclaim is granted, and BSI's second counterclaim—requesting a declaration of invalidity—falls with it, as it is based on the insufficiently pleaded fraud allegations. But when a pleading "can possibly be cured by additional factual allegations," as here, courts should grant leave to amend. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). So the Court grants leave to amend BSI's second and third counterclaims.

### 3. *Counterclaims 4 and 5: UCL Violation and Specific Performance*

BSI's fourth and fifth counterclaims are premised upon RESNET's contract with the California Energy Commission. (*See* ECF 53, at 8–12.) BSI alleges that RESNET breached that contract and thus violated California's Unfair Competition Law (counterclaim 4), and BSI seeks specific performance of the contract (counterclaim 5). (*Id.*) RESNET challenges both counterclaims on the same ground, arguing that "BSI does not have standing as an incidental beneficiary" to enforce a contract between RESNET and the Energy Commission. (ECF 58-1, at 18.) Based on the contract's plain language, however, BSI sufficiently alleges that it can enforce the contract as a third-party beneficiary.

The contract's "construction and performance" is "governed, construed, and enforced in accordance with the laws of" "the State of California." (ECF 53-1, at 4.) In California, "third party beneficiary principles do not require that the person to be benefited be named in the contract, but rather allow the third party to qualify as a contract beneficiary if the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement." *San Diego Hous. Comm'n v. Industrial Indemnity Co.*, 95 Cal. App. 4th 669, 685 (2002).

According to the contract, RESNET cannot enforce its HERS trademark against "any individual, company or governmental entity that deals with the State of California," which "includes . . . service providers who have a professional need to use the terms" and others with a "reason to refer to the possible applications of the related services covered by federal or California codes or regulations at any time." (ECF 53-1, at 3.) BSI alleges that it "deals with the State of California," is a "service provider[]" that has "a professional need to use" the HERS mark, and has a "reason to refer to the possible applications of the related services covered by federal or California codes or regulations." (ECF 53, at 9; *see also* ECF 53-1, at 3.) These allegations plausibly place BSI among the third parties who the "contracting parties must have intended to benefit" because the "intent appears on the terms of the agreement." *See San Diego Housing*, 95 Cal. App. 4th at 685. So, RESNET's motion to dismiss on standing grounds is denied.

Finally, RESNET argues that the UCL counterclaim fails because BSI "alleges no" "damages." (ECF 58-1, at 22.) A UCL claim may only be brought by a "person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Although BSI alleges it "lost money or property" due to RESNET's alleged UCL violation (ECF 53, at 11), "unexplained allegations of 'monetary damages' are indeed too conclusory to demonstrate UCL standing," *LiveRamp, Inc. v. Kochava, Inc.*, No. 19-cv-02158-CRB, 2020 WL 2065696, at *4 (N.D. Cal. Apr. 29, 2020). So, the fourth counterclaim is dismissed, but BSI may amend. *See Salameh*, 726 F.3d at 1133.

B.   **Motion to Strike**

RESNET also appended to the end of its dismissal arguments motions to strike BSI's first and second counterclaims. (ECF 58-1, at 12, 18.) Both are denied. The first request fails for the same reasons as RESNET's motion to dismiss BSI's first counterclaim. *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."). And the second request is denied as moot because the Court dismissed BSI's second counterclaim.

## CONCLUSION

RESNET's motion to dismiss or strike is **GRANTED IN PART**. BSI's counterclaims 2, 3, and 4 are **DISMISSED** with leave to amend. The motion is otherwise denied. By August 26, 2025, BSI must file any amended countercomplaint.

Dated:  July 29, 2025

_____
Hon. Andrew G. Schopler
United States District Judge