UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESIDENTIAL ENERGY SERVICES NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> BUILDING SCIENCE INSTITUTE, LTD. CO., et al., <br><br> Defendants. | Case No.: 22-cv-1641-AGS-MSB <br><br> **ORDER DENYING RECONSIDERATION (ECF 81)** |

This Court preliminarily enjoined defendant Building Science Institute, Ltd. Co. (BSI), from improperly using "HERS" to describe a Home Energy Rating System, as such use likely infringed on plaintiff's trademark. BSI moves for reconsideration.

## DISCUSSION

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). BSI primarily argues that it has presented "newly discovered evidence" and "legal decisions" that "came into existence after the injunction issued," while interspersing arguments about the Court's supposed misunderstandings. (*See* ECF 93, at 2.) BSI only asks the Court to reconsider the "likelihood of success" prong of its preliminary-injunction order. (ECF 81-1, at 8.)

**A.   Newly Discovered Evidence**

BSI's purported "newly discovered evidence" is not "new" by reconsideration-motion standards. A party moving for reconsideration on this ground must "show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." *Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985).

1

BSI presents four items of additional evidence that existed well before this litigation began:

1. The United States Patent and Trademark Office's "files on Plaintiff's two additional contemporaneously filed trademark applications which were rejected by the USPTO,"

2. "Plaintiff's attorney's trademark application prosecution files for the marks HERS®, HERS, and HERS/HOME ENERGY RATING SYSTEM[],"

3. California Energy Commission documents "regarding the Settlement Agreement entered into between Plaintiff and the CEC," and

4. Portions of "Plaintiff's trademark attorney's files regarding the intended scope of the Settlement Agreement with CEC."

(ECF 93, at 4.) But BSI had plenty of time to uncover this material during the nine weeks between the filing of the preliminary-injunction motion and the hearing on it. (*See* ECF 18; ECF 27). BSI has the burden of explaining why a reasonably diligent attorney could not have found these items in the months before the hearing—let alone in the nearly two years between the preliminary injunction's issuance and BSI's belated motion for reconsideration. (*See* ECF 28; ECF 81.) It has not met that burden. *See Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Trust*, 979 F.3d 1209, 1218 (9th Cir. 2020) (noting that a reconsideration motion "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier").

**B.   New Law**

Next, BSI asserts that "new law" demands a different result. But the main case it relies on—*Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333 (Fed. Cir. 2024)—makes BSI's burden of challenging this trademark *more* difficult, not less. (*See* ECF 81-1, at 9–13; ECF 93, at 4–7.) At the time of the preliminary-injunction hearing, the Ninth Circuit had long held that "filing a fraudulent incontestability affidavit [alone] provides a basis for canceling the registration itself." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (cleaned up). *Chutter* rejected that notion and adopted a more demanding process

for litigants, like BSI, who dispute a trademark. The court held that a trademark "registration" may not be cancelled in its entirety solely due to "fraud in connection with acquiring incontestable status," but that such fraud is merely a basis for cancelling the "incontestable status." *Chutter*, 90 F.4th at 1340. After *Chutter*, BSI must first establish that the mark's "incontestability status" was "obtained fraudulently," warranting cancellation of its incontestability, and only then may it challenge the HERS mark's registration. *See id.* at 1337, 1339. It's unclear why this more rigorous legal framework mandates reconsideration of this Court's prior ruling.

Regardless, BSI's new argument that RESNET engaged in fraud during the incontestability process is substantively unavailing as well. In light of the "Settlement Agreement and two abandoned trademark applications," BSI insists that the RESNET representative who filed for trademark incontestability committed fraud by declaring that "no final decision adverse to the owner's claim of ownership of such mark for those goods/services, or to indicate membership in the collective membership organization, exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists." (ECF 81-6, at 46–47; *see* ECF 81-1, at 12.)

But BSI presents no authority that a settlement agreement is a "final decision adverse to the owner's claim of ownership," a "final decision adverse to" "the owner's right to register," or a "pending" "proceeding involving said rights." (*See* ECF 81-6, at 46.) Nor does BSI offer any authority that a previously abandoned trademark application would qualify under those categories. (*Id.*; *cf.* ECF 81-5, at 4 (showing that the USPTO refers to the process as a "NOTICE OF ABANDONMENT").) Despite BSI's argument to the contrary, our case is far different than *Chutter*. The *Chutter* representative signed the incontestability declaration while there were two "pending" actions that challenged the mark's validity—a "cancellation proceeding in the PTO and [an] Eleventh Circuit appeal." 90 F.4th at 1335–36. BSI has presented no evidence of any "pending" challenges to the registered trademark when the RESNET representative made the foregoing declaration in

3

August 2013. (*See* ECF 81-6, at 46.) So, BSI's fraud-during-incontestability argument fails.

BSI gestures at two other cases that don't move the needle either. First, *OpenAI, Inc. v. Open A.I., Inc.*, 719 F. Supp. 3d 1033 (N.D. Cal. 2024), *aff'd*, No. 24-1963, 2024 WL 4763687 (9th Cir. Nov. 13, 2024), is a trial-court opinion that is not binding on this Court. It cannot qualify as "an intervening change in controlling law." *See ACandS, Inc.*, 5 F.3d at 1263. And the affirmance of that case on appeal doesn't help BSI, because the Ninth Circuit never mentioned the specific issue—prior rejections of trademark applications—that BSI focuses on.

Second, BSI points to *Heritage Alliance v. American Policy Roundtable*, 133 F.4th 1063 (Fed. Cir. 2025), which held that the Trademark Trial and Appeal Board "has discretion not to accept" "five-plus years of prior continuous use as 'prima facie evidence' that the marks had acquired distinctiveness." *Id.* at 1070. But that principle was already clear from the statute, which states that the Board "'*may* accept' such proof 'as prima facie evidence that the mark has become distinctive.'" *Id.* (quoting 15 U.S.C. § 1052(f) with emphasis added in the opinion). And, as the *Heritage Alliance* court itself noted, "our case law similarly recognizes the Board's discretion to weigh the evidence" and to reject such prima facie evidence. *Id.* (collecting cases). *Heritage Alliance* is not an intervening change in controlling law.

## C. Clear Error

Finally, BSI asserts that "the Court committed error in relying on Plaintiff's representation of the Settlement Agreement with the [California Energy Commission] as being a license agreement." (ECF 81-1, at 14.) This is so, says BSI, because RESNET "misrepresented the significance of the Settlement Agreement between Plaintiff and the CEC" and "the Court apparently accepted" that misrepresentation "as true." (*Id.* at 13.)

"To be clearly erroneous, a decision must strike [the Court] as more than just maybe or probably wrong; it must be dead wrong." *United States v. Hollis*, 506 F.3d 415, 421 (5th Cir. 2007). But the Court well understood the agreement's import. In fact, after

4

discussing the agreement during oral argument, the Court re-reviewed the document during a recess and later expanded upon the agreement-related analysis when issuing a final ruling at the hearing's end. (*See* ECF 29, at 32, 38, 46.) Even if the Court's description of the agreement as "akin to a license" was imprecise (ECF 29, at 46), as BSI contends, the essential facts of that agreement—and the Court's understanding of its terms—has not changed. BSI has not met its burden to establish that the Court was "dead wrong" about the agreement. *See Hollis*, 506 F.3d at 421.

## CONCLUSION

BSI's reconsideration motion is **DENIED**. The unopposed judicial-notice motion is granted. (*See* ECF 81-3.)

Dated:  November 21, 2025

_____
Hon. Andrew G. Schopler
United States District Judge